**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

D-BAR-D, INC. a New Mexico
corporation; STEPHEN P. DUNPHY,
and STEVEN HEGLUND, Individuals,

    Plaintiffs,

 vs.          No. CIV 98-612 LFG/WWD

AMERICAN EMPLOYER'S INSURANCE
COMPANY, a foreign corporation,

    Defendant.

## MEMORANDUM OPINION AND ORDER

 THIS MATTER comes before the Court on Plaintiffs' and Defendant's cross motions for summary judgment. The Court reviewed the submissions of the parties and, being fully advised in the premises, finds that Plaintiffs' Motion for Summary Judgment [Doc. 43] is well-taken and is GRANTED IN PART, and that Defendant's Motion for Summary Judgment [Doc. 46] is DENIED.

I.
Facts and Procedural History

 In this diversity action, Plaintiffs seek compensatory and punitive damages against their insurer, alleging that the company breached its duty to defend them in a suit brought by their former tenants, and otherwise acted in bad faith. The primary issues on these summary judgment motions involve interpretation of the insurance policy. An insurance policy is a contract, and construction of a contract is an issue of law for the trial court, not one of fact for a jury. Hartford Accident. & Indem. Co. v. U.S. Fidelity & Guar. Co., 962 F.2d 1484, 1486 (10th Cir. 1992).

Individual Plaintiffs Stephen D. Dunphy and Steven Heglund are officers in D-Bar-D, Inc., also a named Plaintiff. Plaintiffs are owners of a lodge and saloon in Red River, New Mexico. They originally brought this action in state court against American Employer's Insurance Company, which provided coverage for them under a general commercial liability policy. Defendant removed the case to federal court. Plaintiffs seek compensatory and punitive damages against the company for its alleged bad faith and failure to defend them in a lawsuit (hereinafter referred to as "the Miller suit)," brought against them in 1996 by the Miller family, who were tenants and prospective purchasers of the Plaintiffs' property and business in Red River.

In the Fall of 1993, Plaintiffs Dunphy and Heglund entered into a lease/purchase agreement with Joseph and Martha Miller ("the Millers") for the business and real property known as the Lodge at Red River and Motherlode Saloon. In May 1996, the Millers sued Plaintiffs in a California state court, seeking recission of the lease/purchase agreement among other remedies and alleging various misdeeds on the part of Plaintiffs. This complaint will be considered in detail below. The Millers vacated the Red River premises in September 1996.

Plaintiffs purchased a general commercial liability policy from Defendant, which provided coverage for "personal injury" and "property damage" liability; this coverage will be described further below. In April, 1997, following receipt of Millers' lawsuit, Plaintiffs' attorney wrote to Defendant's Boston office, providing a copy of the Miller complaint and demanding that Defendant provide a defense to the suit. Plaintiffs, through their private attorney, made numerous written requests over the course of the Miller litigation that Defendant provide a defense and indemnification. Defendant's only response was a letter from a claims examiner in July, 1997, stating that the company was looking into the question of coverage and, in the meantime, Plaintiffs should continue to defend the suit with

their own legal counsel. Defendant neither agreed to defend nor declined coverage.

Plaintiffs still had no decision from Defendant in February 1998 when the Miller suit ended after several days of trial, with the Millers voluntarily dismissing the complaint with prejudice. Plaintiffs bring this action seeking not only to recoup their expenses and attorneys' fees incurred in defending the Miller suit, but also to recover punitive damages for Defendants' alleged bad-faith refusal to provide a defense.

## II.
## Standards for Summary Judgment

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the allegations in its pleadings to avoid summary judgment. Fed. R. Civ.

P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). Nor will that party's mere argument or contention suffice to defeat a *prima facie* showing of an entitlement to judgment.

Summary judgment is appropriate only if there is not sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson, 477 U.S. at 249, 106 S. Ct. at 2511. Thus, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52, 106 S. Ct. at 2512. In considering a motion for summary judgment, the Court construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Perry v. Woodward, 188 F.3d 1220, 1225 (10th Cir. 1999).

Plaintiffs claim they are entitled to summary judgment because it is clear, as a matter of law, that the insurer had a duty to defend them in the Miller suit and that it breached this duty. They contend that the duty to defend arose because the Millers' claims actually or potentially fell within the stated coverage of the policy, and the events at issue occurred within the policy period. Because the Millers dropped their claims against Plaintiffs after several days of trial, the parties agree that there is no duty to indemnify; however, Plaintiffs state that they incurred substantial expense in defending the Miller suit, and for this, they seek recovery. In addition, they ask for punitive damages for Defendant's alleged bad faith in the manner in which it handled their claim.

Defendant insurance company does not dispute that it failed to respond one way or the other to Plaintiffs' requests for coverage and a defense, nor did it supply any defense for Plaintiffs in the Miller suit. The company contends, however, that it is entitled to summary judgment because it had

no duty to defend, since the claims alleged in the Miller suit were not within the substantive coverage of the policy and occurred outside of the policy period. Defendant also denies that it acted in bad faith.

The Court finds, as a matter of law, that Defendant American Employer's did have a duty under the insurance policy to defend Plaintiffs in the Miller suit, and that it breached this duty. There is no genuine issue of material fact precluding a ruling on the duty to defend, and partial summary judgment will be entered for the Plaintiffs on this issue. Factual issues remain, however, regarding damages and the question of bad faith; these will be left for determination by the jury.

III.
Analysis

A. <u>Applicable Law</u>.

Defendants contend that California law controls in this case, since the Miller action was brought in California court, and the complaint was drafted by a California attorney. The Court rejects this argument. The contract of insurance was entered into in New Mexico. There is no "choice of law" provision adopting the substantive law of some other forum. New Mexico's substantive insurance law is applicable in this diversity action. <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 58 S. Ct. 817 (1938); <u>Sena v. Travelers Ins. Co.</u>, 801 F. Supp. 471, 473 (D.N.M. 1992). The New Mexico Supreme Court's pronouncement on issues of state law are binding on the federal court in a diversity action. <u>Menne v. Celotex Corp.</u>, 861 F.2d 1453, 1464 n.15 (10th Cir. 1988); <u>Servants of the Paraclete, Inc. v. Great Am. Ins. Co.</u> ("<u>Servants II</u>"), 866 F. Supp. 1560, 1577 (D.N.M. 1994). Thus, the Court will apply New Mexico law and is bound by the appellate decisions of the New Mexico courts.

Where the New Mexico Supreme Court has not addressed an issue, the federal court must determine what decision the state court would make if faced with the question, taking into account Supreme Court dicta, other court decisions in New Mexico, decisions of other states, federal decisions, and the general weight and trend of authority. Menne v. Celotex; Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988). Although a federal court may anticipate how the state court would rule on an unresolved issue of state law, it should not do so unless absolutely necessary. Valley Improvement Ass'n v. U.S. Fidelity & Guar. Corp., 129 F.3d 1108, 1119 (10th Cir. 1997). Thus, although California law may be consulted on matters not yet addressed by the New Mexico Supreme Court, it is not to be given any greater weight than the law of any other jurisdiction. This analysis attempts, where possible, to follow the dictates of New Mexico law.

B. The Insurance Company Was Under a Duty to Defend Plaintiffs in the Miller Suit.

1. Standards for Determining Duty to Defend

Insurance is fundamentally a matter of state contract law. Sena, at 477. New Mexico law provides that the reasonable expectations of an insured regarding coverage should be protected. Servants of the Paraclete v. Great Am. Ins. Co. ("Servants I"), 857 F. Supp. 822, 830 (D.N.M. 1994).

The insured's reasonable expectations include more than the insurer's express agreement to pay certain types of claims. The insured has purchased more than that. The insured purchased security from financial loss and peace of mind from fears that accompany the risk of financial loss. Moreover, the contract of insurance goes beyond the insurer's express promise to pay certain claims; implicit in the agreement is an equally important implied covenant: the insurer must treat its insured fairly, and may not be partial to its own interests, but must give its interests and the interests of its insured equal consideration. Dairyland Ins. Co. v. Herman, 124 N.M. 624, 954 P.2d 56 (1997). See

D. Berardinelli, <u>New Mexico Trial Lawyer</u>, Vol. XXVII, No. 5, May 1999.

The test for determining whether an insurance company has a duty to defend its insured is one of reason: whether the defense sought is for a coverage which the insured desired to purchase and for which he paid premiums. <u>Servants I</u>, at 830. The insured has purchased the right to a defense, as much as the right to indemnification:

> The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability.

<u>Montrose Chem. Corp. v. Superior Court</u>, 6 Cal. 4th 287, 295-296, 24 Cal. Rptr.2d 467, 861 P.2d 1153 (1993). An insurer's duty to defend its insured against a third party claim is independent of and broader than its duty to indemnify. <u>Found. Reserve Ins. Co., Inc. v. Mullenix</u>, 97 N.M. 618, 619, 642 P.2d 604, 605 (1982). Therefore, the insurer may be liable for damages arising from its unjustified failure to defend, even if the insured ultimately incurs no liability in the underlying suit. <u>Id.</u>

An insurer's duty to defend arises out of the nature of the allegations of the complaint brought against the insured; the existence and scope of the duty are determined by comparing the factual allegations of the complaint with the language of the insurance policy's coverage provisions. <u>Lopez v. N.M. Pub. Schs. Ins. Auth.</u>, 117 N.M. 207, 209, 870 P.2d 745, 747 (1994). The issue for determination by the court is whether the allegations state a claim within the terms of the policy. <u>American Employer's Ins. Co. v. Continental Cas. Co.</u>, 85 N.M. 346, 347, 512 P.2d 674, 675 (1973). It is of no consequence that some of the allegations in the complaint are beyond the scope of coverage if any of the allegations are within the scope. <u>Id.</u>

If the allegations of the complaint are "arguably" or "potentially" within the scope of

coverage, the insurer is obligated to defend. <u>American Gen. Fire & Cas. Co. v. Progressive Cas. Co.</u>, 110 N.M. 741, 744, 799 P.2d 1113, 1116 (1990); <u>State Farm Fire & Cas. Co. v. Ruiz</u>, 36 F. Supp. 2d 1308, 1312 (D.N.M. 1999). If the complaint is ambiguous in that it fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within coverage, the insurer nevertheless has a duty to defend if the allegations "tend to show an occurrence within the coverage." <u>American Employer's</u>, 85 N.M. at 348; <u>Mullenix</u>, 97 N.M. at 620. It is only if the allegations of the complaint clearly fall outside the policy provisions, and it can be concluded as a matter of law that there is no basis for indemnity, that the insurer is relieved of its duty to defend. <u>State Farm Fire & Cas. Co. v. Price</u>, 101 N.M. 438, 442, 684 P.2d 524, 528 (Ct. App. 1984), *overruled on other grounds*, <u>Ellingwood v. N.N. Investors Life Ins. Co.</u>, 111 N.M. 301, 805 P.2d 70 (1991); <u>Servants I</u>, at 835.

 "[A]ny doubt about whether the allegations are within policy coverage is resolved in the insured's favor." <u>Price</u>, 101 N.M. at 442. "In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." <u>Tinseltown Video, Inc. v. Transp. Ins. Co.</u>, 61 Cal. App. 4th 184, 19, 71 Cal. Rptr. 371, 377 (1998). These holdings are in line with the "guiding principle of New Mexico insurance law" that any ambiguity in a policy must be liberally construed in favor of the insured. <u>Servants I</u>, at 835-36.

If the complaint alleges some claims potentially within policy coverage, the insurer is obligated to defend the entire action, even if the complaint includes other causes of action which do not come within the terms of the policy. <u>American Employer's</u>, 85 N.M. at 349. It is only if the court can say as a matter of law that all of the claims are outside the coverage of the policy, that the insurer is relieved of its duty to defend. <u>Lopez</u>, 117 N.M. at 208, 210.

Even the insurer's good faith, but erroneous, belief that there is no coverage is not a defense to the breach of the duty to defend. Lujan v. Gonzales, 84 N.M. 229, 234, 501 P.2d 673, 677 (Ct. App. 1972). Thus, when there is some doubt about coverage, either factually or legally, the insurer should defend the claim or alternatively seek a court determination on the issue, either in the primary litigation or in a separate declaratory action; a mere unilateral determination that there is no duty to defend on a questionable claim is not an acceptable remedy. Mullenix, 97 N.M. at 620. The insurer is under a duty to defend the insured in the primary action until a court determines it to be relieved of liability under the non-coverage provision of the policy. Id. See also, Ruiz, at 1316:

> [T]his Court has no doubt that the state court would have concluded that the claims fell outside the scope of the policy coverage if State Farm had simply asked for such a determination. State Farm, however, chose to refuse coverage based solely on its own unilateral determination rather than following the clear dictates of the New Mexico Supreme Court. State Farm must now live with the consequences of that choice . . . . Having failed to challenge the complaint in state court, State Farm is now bound by the facts pled in the complaint, with all its ambiguities, at least with regard to its duty to defend.

It is with these principles in mind that the Court turns to the task of comparing the allegations in the Miller complaint with the language of the American Employer's policy.

2. The Miller Allegations

Plaintiffs' claim that the Miller complaint "alleged a host of negligent and intentional acts related to the Millers' lease, occupancy and use of the Lodge . . . ." (Plaintiffs' Motion for Summary Judgment and Supporting Memorandum ["Plaintiffs' Memorandum"], at 2). Defendant contends that this mischaracterizes the Miller complaint, arguing the complaint "never alleged a single negligent

act."  (American's Response to Plaintiffs' Motion for Summary Judgment ["Defendant's Response"], at 3).

The Miller complaint alleges five separate causes of action, giving them the following labels: Fraud, Negligent Misrepresentation, Breach of Contract, Recission and Restitution, and Breach of the Implied Covenant of Good Faith and Fair Dealing.  The first cause of action spans 15 pages of the complaint.  It alleges that, in various conversations commencing August 1, 1993,  Plaintiffs (who were of course the defendants in the Miller action, but who will continue to be referred to herein as Plaintiffs) "falsely and fraudulently" made various misrepresentations or concealed facts as to the physical condition of the Lodge and Saloon premises, as to the marketability of the title thereto, as to the income-producing potential of the businesses, and as to the reputation of the businesses in the community.  They further allege that Plaintiffs knew the representations to be false at the time they were made and knew the concealed facts to be material to the negotiation, and that in taking these actions, Plaintiffs intended to induce the Millers to enter into the lease/purchase agreement and to take other actions in connection therewith.

In their second cause of action, labeled Negligent Misrepresentation, the Millers claim that Plaintiffs made the misrepresentations set forth in the first cause of action with no reasonable ground for believing them to be true.  They further allege that Plaintiffs made the representations with the intent to induce the Millers to enter into the contract, and with a willful and conscious disregard for the Millers' rights, which was "despicable" and renders Plaintiffs liable for punitive damages.

In the third cause of action, labeled Breach of Contract, the Millers contend that, commencing in or about September, 1993, Plaintiffs breached their contract by:  (1) failing to deliver marketable title to the assets purchased by the Millers, (2) failing to pay all debts and liabilities incurred in

operation of the businesses prior to delivery to the Millers, (3) failing to comply with laws and regulations of city, county, state, and federal governments, and (4) failing to maintain the premises in good repair.

In the fourth cause of action, the Millers seek recission of the lease/purchase agreement, alleging that they have suffered and will continue to suffer substantial harm if the agreement is not rescinded.  In the fifth cause of action, the Millers allege breach by Plaintiffs of an implied covenant of good faith and fair dealing, with intent to deprive the Millers of the benefits of the lease/purchase agreement and in conscious disregard of the Millers' rights.  They ask for recission of the agreement, compensatory and punitive damages, restitution of all consideration conferred upon Plaintiffs, and attorneys' fees.

The implications of the language of this pleading will be discussed below.

### 3. Coverage Under the Commercial General Liability Policy.

The policies considered by the Court on these summary judgment motions are the three policies attached to the joint Stipulation of Parties Regarding Insurance Policies [Doc. 41].  These policies cover a period from June 1, 1995 to August 1, 1997.  Although there are references in Plaintiffs' briefs and exhibits, neither party raises any issue, nor supplies any evidence, of earlier coverage in their briefing on these motions.[1]  Defendant assumes that the policy period begins on June 1, 1995, and Plaintiffs do not dispute this in their briefing on the issue of timing.  In addition, there is no dispute between the parties as to the applicable policy language in this case.  The Court therefore assumes, for purposes of these motions, that Defendant did not provide coverage prior to June 1, 1995, and that the identical language of the policies attached as Exhibits A and B to Plaintiffs'

---

[1] See, e.g., Plaintiffs' Memorandum, at pp. 4, 14; and Exhibit F thereto.

11

Amended Complaint is the material language at issue herein. These policies will be referred to below as "the policy."

a. "Personal Injury" Coverage.

Coverage B of the policy provides that the insurer will pay any damages that the insured becomes legally obligated to pay as damages because of "personal injury," defined as "injury, other than 'bodily injury,' arising out of one or more of the following offenses:  . . . (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor."

In the world of liability insurance, the term "personal injury" is used in a highly specialized sense.  "It does not mean physical damage to a person; rather it means injury arising out of one or more specialized offenses . . . [It is] intended to broaden coverage from the confines of bodily injury or property damage, [and] has been applied to a wide variety of claims." Tinseltown, 61 Cal. App. 4th at 195.  Unlike the policy provision for property damage, the personal injury coverage is not limited to "occurrences," and so it is not necessary that an "accident" be alleged in order to invoke coverage. Valley Improvement, at 1117.

Plaintiffs contend that the allegations of the Miller complaint state a cause of action for wrongful eviction, or invasion of the right of private occupancy of the premises, and thus come within policy coverage for "personal injury."  Defendant's response is that the Miller claims sound solely in contract and therefore cannot come within the coverage of a commercial general liability policy.  The "label" attached to a party's claim is not as significant as the facts alleged.  If the facts pled or the reasonable inferences from those facts arguably fall within the scope of coverage, there is a duty to defend. American General, N.M. at 744.  The Court finds that the Millers have alleged facts which

12

bring their complaint within "personal injury" coverage.

Although none of the causes of action in the Miller complaint is labeled "eviction" or "invasion of the right of private occupancy," the label is not important. If the complaint can be read as potentially stating a claim within coverage, it is irrelevant whether or not the particular claim is expressly pled. Valley Improvement, at 1118. The Court must look to the facts alleged, regardless of the legal label attached to them. Liberty Mut. Ins. Co. v. E. Cent. Okla. Elec. Coop., 97 F.3d 383, 391 (10th Cir. 1996). "The focus must be on the origin of the damages, not the legal theory asserted for recovery." Lopez, 177 N.M. at 209.

The Millers stated facts in their complaint which potentially bring their claims within the legal theories of constructive eviction and invasion of the right of private occupancy, thereby making Coverage B applicable and giving rise to a duty to defend. The Millers alleged that the Lodge and Saloon had "numerous, egregious defects" which Plaintiffs knew about but failed to disclose to the Millers, including dangerous electrical wiring, faulty gas service, including carbon monoxide leakage, inadequate plumbing which caused several water leaks in the roof. They further alleged that Plaintiffs did not have clear and marketable title to the property, that Plaintiffs were delinquent in paying suppliers and in payment of various fees and taxes, and that Plaintiffs had permitted the County Health Department license to expire, leading to a shutdown by the Department during the term of the lease. (Miller Complaint, ¶¶17, 32-33). The Millers claim that they have been damaged as a result of Plaintiffs' actions in that they have been deprived of their property rights and have suffered and will continue to suffer substantial harm and injury in that they have been deprived of the benefit of their contract and the benefit of their bargain in the operation of the business. (Miller Complaint, ¶¶ 24, 29, 33,36, 40-41).

These allegations are sufficient to state a claim for loss of beneficial use, loss of peaceful enjoyment or, in other words, invasion of the right of private occupancy, of the leased premises. Under New Mexico law, every lease contains an implied covenant of quiet possession and enjoyment. Barfield v. Damon, 56 N.M. 515, 519, 245 P.2d 1032, 1034-35 (1952). A failure by the landlord to supply heat and water, or to allow safety code violations to go unremedied, can amount to constructive eviction. Kennedy v. Nelson, 76 N.M. 299, 414 P.2d 518 (1966); Dennison v. Marlowe, 106 N.M. 433, 744 P.2d 906 (1987).

> [T]o state a claim for a breach of quiet enjoyment, the severity of interference must be such that the premises become unfit for the purpose for which they were leased . . . [and] tenant must show that he was actually or constructively evicted . . . Constructive eviction occurs when the landlord's actions substantially deprive the tenant of the beneficial use of the leased premises and the tenant vacates, or when the landlord acts maliciously and his actions are so severe as to interfere with the tenant's peaceful enjoyment of the premises.

Winrock Inn Co. v. Prudential Ins. Co. of America, 122 N.M. 562, 570, 928 P.2d 947, 955 (Ct. App. 1996). "Constructive eviction" in New Mexico generally means "an injurious interference with one party's possession [or] substantial deprivation of the party's beneficial use of the premises, and such impairment of the party's right to reasonable use of the premises that he is compelled to vacate the property." Olivas v. Olivas, 108 N.M. 814, 822, 780 P.2d 640, 648 (Ct. App. 1989).

The general requirement that the tenant must abandon the premises in order to state a cause of action for constructive eviction is subject to some qualification under New Mexico law. A delay in vacating, for instance, may be justified if the claimant shows either a reliance on promises by the landlord to correct the deficiency, or else a recurrence of adverse conditions, as when the landlord repeatedly acts with malice and bad faith in attempts to oust a tenant in rightful possession. Barfield,

56 N.M. at 520-21; El Paso Natural Gas Co. v. Kysar Ins. Agency, Inc., 98 N.M. 86, 88, 645 P.2d 442, 444 (1982).

In the present case, the Millers brought suit in May of 1996, but did not vacate the premises until approximately three months later, in August 1996. (Exhibits C, F to Plaintiff's Memorandum). However, the Miller complaint "can be read" as alleging repeated or continuous acts of malice and bad faith, so as to bring the claims within the policy's "personal injury" coverage. For example, the Millers allege that the Lodge and Motherlode "had numerous, egregious defects" of which Plaintiffs were aware, including inadequate and dangerous electrical, gas, and plumbing service, leaks in the roof, ventilation defects. (Miller Complaint, ¶17). In addition, they allege that Plaintiffs were deficient in payment of their taxes and license fees and let their County Health Department license expire, with the result that the Department notified the Millers they were required to shut down. (Id.). They further allege that Plaintiffs intentionally and/or negligently misrepresented and concealed these defects, thereby depriving the Millers of property rights, and that this "despicable conduct" was undertaken "in conscious disregard of [the Millers'] rights."

These allegations, while apparently not designed explicitly to state a cause of action for constructive eviction or deprivation of the right of quiet enjoyment under New Mexico law, nevertheless allege facts which could be read as stating such claims. In addition, it is not clear from the complaint when the allegations of defects in the electrical, gas, and plumbing systems, and violations of health department regulations, are supposed to have occurred. The implication is that these were continuing or recurring problems; in any case, there is nothing in the complaint that restricts these offenses to a time predating the policy period, and ambiguities are to be resolved in favor of the insured. Thus, Plaintiffs have met their burden of showing that the claims of the Miller

complaint could potentially fall within policy coverage for "personal injury," and Defendant has failed to establish that they cannot.

b. <u>"Property Damage" Coverage</u>

Plaintiffs also contend that the allegations of the Miller complaint come within the policy's Coverage A for "property damage," defined as physical injury to tangible property, including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured. Under the terms of the policy, the property damage must be caused by an occurrence, defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy contains exclusions for property damage which the insured expected or intended, and for damage to property owned by or in the care, custody and control of the insured.

Plaintiffs argue that the Miller complaint alleges property damage in its assertion that Plaintiffs failed to keep the assets purchased by the Millers in good repair. They further assert that because the Millers do not specify the date the damage occurred, it could possibly fall within the policy period. And they contend that the complaint does not clearly allege whether Plaintiffs' actions in failing to maintain the property were intentional or negligent. Plaintiffs also claim that the cause of action for "negligent misrepresentation" falls within Coverage A.

Defendant counters that the Miller complaint alleges only actions occurring prior to June 1, 1995, that the acts alleged are clearly intentional rather than accidental or fortuitous, and further, that the exclusion for property owned by the insured is applicable in this case and defeats coverage. Defendant also argues that the dispute between Plaintiffs and the Millers is entirely based on contract and thus does not come within the policy's protection.

Having found that the Miller complaint states a claim for "personal injury" within the policy's coverage, and thus that Defendant had a duty to defend its insured against the entire Miller lawsuit, the Court finds it unnecessary to decide whether Plaintiffs were also covered under the "property damage" provisions of the policy.  If any portion of the claims arguably come within the scope of coverage, the fact that other claims do not, does not alter the insurer's obligation to defend.  American Employers , 85 N.M. at 349.  In assessing its duty to defend, the insurer was under an obligation to consider whether the Miller complaint had any potential for coverage.  Defendant failed to fulfill that obligation, and it had a duty to defend the entire lawsuit.

### 4.  Result of Finding a Duty to Defend

Defendant acknowledges that it did not defend Plaintiffs in the Miller suit.  (Brief in Support of Defendant's Motion for Summary Judgment ["Defendant's Brief"], at 3).  The Court has found a duty to defend; Defendant's failure to provide a defense therefore constitutes a breach of that duty. Plaintiffs incurred no liability to the Millers because the suit was dismissed after several days of trial. However, they did incur attorneys' fees and expenses in defending the action without Defendant's help, and therefore claim an entitlement to recover the reasonable costs of that defense.  Lopez, 117 N.M. at 208 n.1; Lujan, 84 N.M. at 238.

Whether the expenses and attorney fees were in fact "necessary and reasonable" are matters for determination by the jury.  Lujan, 84 N.M. at 239; American General, 110 N.M. at 746; Ruiz, at 1319.  The issue of damages will therefore be left for trial.  No coverage defenses will be available to the insured at trial of the damages issues.  Valley Improvement, at 1125 (citing Price).  See also, Ruiz, at 1317-18 (rejecting the District Court's language to the contrary in Servants I and II, in light of the Tenth Circuit's holding in Valley Improvement).  However, the insurer may raise the issue of

whether the expenses were incurred prior to the time it was put on notice of the Miller suit. American General, 110 N.M. at 747.

C. Issues of Bad Faith.

Plaintiffs claim that, in addition to breaching its duty to defend, Defendant was also guilty of bad faith for the manner in which it handled the claim. Indeed, they argue that bad faith would be an issue in this case even if the Court were to find that Defendant did not have a duty to defend. Specifically, they point to evidence that Defendant essentially did nothing when faced with Plaintiffs' demand for a defense and indemnification in connection with the Miller suit, and never informed Plaintiffs one way or the other whether it would defend them. Plaintiffs allege that they incurred substantial financial injury not only because Defendant failed to defend, but also because Defendant failed to communicate a decision on their claim and demand for a defense. They argue that Defendant's behavior represents "the very essence of bad faith," and therefore they are entitled to summary judgment on this issue. (Plaintiff's Memorandum, at 12-16).

Defendant counters that there can be no bad faith, because there was no duty to defend in the first place, thus, arguing the "no harm, no foul" approach. Both parties state that the issue of liability for bad faith claim-handling, in the absence of a duty to defend, is an issue of first impression in New Mexico.[2] Having found there was a duty to defend under the circumstances of this case, the Court need not reach this unresolved issue of state law. *See*, Valley Improvement, at 1119.

In any case, the Court cannot find as a matter of law that Defendant's treatment of Plaintiffs' claim rose to the level of bad faith; the issue is not so clear that it can be taken from the jury. A

_____

[2] An excellent discussion of this issue appears in D. Berardinelli's "Bad Faith Claims Handling Practices: Does No Harm Mean No Foul?", Vol. XXVII, No. 5, The New Mexico Trial Lawyer, May 1999.

failure to defend when called upon to do so may, but does not necessarily, amount to bad faith; it depends on the facts of the particular case. Price, 101 N.M. at 446; Ruiz, at 1318. See also United Nuclear Corp. v. Allendale Mut. Ins. Co., 103 N.M. 480, 709 P.2d 649 (1985). The issue of bad faith arises when there is evidence that an insurer has been partial to its own interests rather than giving equal consideration to the interests of its insured. Dairyland Ins. v. Herman, 124 N.M. 624, 954 P.2d 56 (1997). In Lujan, 84 N.M. at 236, the court held that evidence of the insurer's failure to respond to its insured's requests for settlement, until after the settlement offer had expired, "raises factual questions as to what consideration Allstate gave to Gonzales' interest." The Court therefore denied the insurer's motion for summary judgment and sent the issue to the jury.

Similarly, the facts and inferences in the present case are not so obvious that determination of the issue of bad faith should be taken from the jury. Plaintiffs point to evidence that they made several requests for indemnity and a defense to the Miller action, but Defendant's sole response was a letter from claims examiner Leonard Funk, telling Plaintiffs that the company was still deciding whether to defend and recommending that Plaintiffs' private counsel continue his representation. (Exhibit S to Plaintiffs' Memorandum). It is undisputed that neither Mr. Funk nor any other employee of Defendant ever made or communicated a decision one way or the other to Plaintiffs regarding defense of the Miller suit. One of Defendant's own employees agreed that Mr. Funk had "dropped the ball" in his handling of Plaintiffs' file (Plaintiffs' Memorandum, Exhibit M, at 17).

In order to constitute bad faith, an insurer's failure to pay a claim must be "frivolous or unfounded." United Nuclear Corp., 103 N.M.at 485; Gallegos v. Citizens Ins. Agency, 108 N.M. 722, 730, 779 P.2d 99, 107 (1989).

> 'Unfounded' in this context does not mean erroneous or incorrect; it means essentially the same thing as reckless disregard, in which the insurer utterly fails to exercise care for the interests of the insured in denying or delaying payment on an insurance policy . . . It means an utter or total lack of foundation for an assertion of nonliability – an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim.

Jackson Nat'l Life Ins. Co. v. Receconi, 113 N.M. 403, 419, 827 P.2d 118, 134 (1992).

Although there is evidence on the record that Defendant treated Plaintiffs' request for coverage and defense with reckless disregard, the Court cannot say as a matter of law that Defendant had no reasonable basis for denying coverage. This is a matter for the jury to decide. Summary judgment will not be granted to either party on the issue of bad faith.

## IV.
## Conclusion

Plaintiffs have demonstrated that there is no genuine issue for trial on the question of Defendant's duty to defend. However, they have not shown, as a matter of law, that Defendant acted in bad faith in handling their request for defense and indemnity, and that issue will be left for determination by the jury, as will the amount of damages. Defendant has not shown that it is entitled to summary judgment on issues of liability.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment [Doc. 43] is granted in part, to the extent the Court finds as a matter of law that Defendant had a duty to defend the Miller suit. Plaintiffs' motion is denied insofar as it requests summary judgment on the issue of bad faith.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [Doc. 46] is denied.

_Lorenzo F. Garcia_

Lorenzo F. Garcia
United States Magistrate Judge

PLAINTIFFS' ATTORNEYS:
Donald C. Clifford, Esq.
Robert Bruce Collins, Esq.

DEFENDANT'S ATTORNEYS:
Lawrence H. Hill, Esq.
Judith M. Oliva, Esq.